IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TATTOO JOHNNY, INC.,
a New Jersey Corporation,

: CIVIL ACTION NO.:

Plaintiff,

: COMPLAINT    08-035

v.

MATTHEW WALKER,

Defendant.

Plaintiff Tattoo Johnny, Inc., by way of Complaint asserted against defendant Matthew Walker, hereby says as follows:

### Parties

1. Plaintiff Tattoo Johnny, Inc. ("Tattoo Johnny"), is a New Jersey corporation with its principal place of business located in Tyrone, Georgia.

2. Defendant Matthew Walker ("Walker"), is an individual, who upon information and belief, resides at 351 Wedgewood Rd., Newark, Delaware 19711.

### Jurisdiction and Venue

3. This Complaint arises under the 1976 Copyright Act, 17 U.S.C. §§ 101, 102, 103, 106, and 201 and 17 U.S.C. § 512, *et al.* (the "Copyright Act") and common law.

4. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338 and 1367.

5. This Court is the proper venue for this Complaint pursuant to 28 U.S.C. § 1400.

## Background

6. Tattoo Johnny is in the business of, *inter alia*, selling tattoo designs to tattoo studios and individuals around the world via printed media and the Internet; and licensing designs and other properties for reproduction on assorted manufactured goods.

7. Tattoo Johnny was formed in 2001 to conduct business under its original parent corporation, Laser Tech Advertising, Inc ("Laser Tech").

8. Originally, Tattoo Johnny sold tattoo designs through a mail order catalog directly to tattoo studios.

9. In or around 2003, Mark Nelson ("Mark") and David Bollt ("David") divested Laser Tech of Tattoo Johnny. Thereafter, Mark and David became the sole owners of Tattoo Johnny – each owning fifty percent.

10. Tattoo Johnny previously retained the services of a company formerly called MRI Services, Inc. ("MRI") for all of its fulfillment requirements. These requirements included, but were not limited to, packaging, order processing and shipping.

## Creation of the Tattoo Johnny Website

11. In or around the end of 2003, Tattoo Johnny engaged the services of MRI to build an e-commerce website (the "Website") for Tattoo Johnny at www.tattoojohnny.com.

12. Tattoo Johnny developed all specifications and functionality requirements, as well as the desired "look and feel", for the Website. Tattoo Johnny provided all of the foregoing to MRI, and commissioned MRI to construct the Website as an audiovisual work on a work made for hire basis.

13. As part of its arrangement with MRI, MRI was required to seek and obtain prior approval of Tattoo Johnny for all aspects of the Website. Tattoo Johnny was, therefore,

also consulted prior to MRI making any change in the specifications for the Website.

14. Tattoo Johnny paid approximately $12,000 to MRI for the construction of the Website.

15. Upon information and belief, an employee of MRI, Greg Kilmer ("Greg") was in charge of overseeing the construction of the Website.

16. Upon information and belief, another MRI employee, Paul Disbrow ("Paul") was commissioned to actually construct the Website under Greg's direction -- all pursuant to Tattoo Johnny's specifications.

17. Upon information and belief, Walker, who was a friend of Paul's, also helped construct the Website under Greg's and Paul's direction, and in accordance with Tattoo Johnny's specifications.

18. After months of development and numerous delays, the Website was finally delivered to Tattoo Johnny in or around early 2005. In or around February 2005, the Website was launched.

19. Upon the launching of the Website, Tattoo Johnny sought the services of a webmaster to manage the Website. Tattoo Johnny contacted Walker regarding such a position.

20. Upon information and belief, by the time Tattoo Johnny was considering the possibility of employing him, Walker was working full-time for Compass Rose Design, Inc ("Compass").

21. Tattoo Johnny initially hired Walker on a part-time basis to oversee and maintain the Website. Upon information and belief, Walker continued to work full time for Compass during this time.

22. Walker was paid ten percent (10%) of all design download sales from the

Website as compensation for his services as the Website's webmaster.

23. In or around the beginning of 2005, Walker informed Mark and David that he wanted to leave Compass and work full-time for Tattoo Johnny.

**Walker Begins Working Directly for Tattoo Johnny**

24. In or around early 2005, Walker ceased his employment at Compass and began working full-time for Tattoo Johnny.

25. In consideration for his full-time services, Tattoo Johnny agreed to pay Walker a salary of $1,400 per month ("Initial Salary") until such time as ten percent (10%) of the revenue from design download sales exceeded the Initial Salary. At that point, Walker's compensation for his continued services would revert to ten percent (10%) of said revenue.

26. Until approximately July 2005, Tattoo Johnny paid the Initial Salary to Walker on a monthly basis. In or about August 2005, Walker began to receive as his compensation ten percent (10%) of download sales.

27. In or around late 2005, Mark and David purchased a house ("Georgia House") in Tyrone, Georgia as a residence and a headquarters for Tattoo Johnny's business.

28. In or around March 2006, Walker was invited to reside at the Georgia House with his wife Jaime ("Jaime") as an additional financial benefit to working for Tattoo Johnny. Walker and Jaime accepted Tattoo Johnny's offer and moved from Delaware to the Georgia House.

29. While living in the Georgia House and working exclusively for Tattoo Johnny, Walker's job responsibilities included, *inter alia*:

    a. Updating and maintaining the Website;

    b. Setting up Tattoo Johnny's computer infrastructure;

       c.      Creating and maintaining accounting packages for Tattoo Johnny;

       d.      Creating additional web applications at the request of Mark and David for Tattoo Johnny and the Website;

       e.      Answering phones and taking customer orders;

       f.      Following up with credit card fraud inquiries;

       g.      Servicing customers in a support capacity;

       h.      Fulfilling and processing Website and other orders;

       i.      Participating in company strategy meetings for increasing performance and revenue;

       j.      Advising Tattoo Johnny with regard to technical requirements for Tattoo Johnny, the Georgia House and the Website;

       k.      Bringing packages to the post office and mailing them for Tattoo Johnny; and

       l.      Traveling to the bank to make deposits and any authorized withdrawals on behalf of Tattoo Johnny.

30.    At no time during his part-time or full-time services for Tattoo Johnny did Walker ever work independently. Rather, he always worked under the control of Tattoo Johnny in the capacity of a typical employee.

31.    In or around the middle of 2007, Walker's job performance faltered and he began causing problems at Tattoo Johnny and in the Georgia House. Specifically, Walker's work product became sloppy, his communication with Mark and David dropped off, he disrupted work with continuous conspiracy theories, and he began expressing noticeable anger and attitude towards Mark. Other Tattoo Johnny employees began to feel threatened and uncomfortable by

Walker's actions and behavior.

32. In or around October 2007, Tattoo Johnny terminated Walker's services.

33. Upon Walker's termination of his services with Tattoo Johnny, Walker continuously threatened Mark and David. These threats included, but were not limited to, the following: "I can bring you to your knees"; and "I am not the kind of person that wants to hurt any of you, but I will do what I have to do."

34. In response to Walker's continued threats, Tattoo Johnny was forced to take certain security measures to prevent Walker from sabotaging and vandalizing the Website and Tattoo Johnny's business.

35. In further response to Walker's threats, and because Walker had access to all of Tattoo Johnny's company passwords and trade secrets, Tattoo Johnny was forced to hire outside consulting and expert services to implement widespread security measures to prevent Walker from damaging Tattoo Johnny's Web infrastructure and business.

**Creation of Web Vendor Functionality**

36. In or around March 2006, Walker, while still working exclusively for Tattoo Johnny and at Tattoo Johnny's direction, began building additional functionality for the Website to handle the order, product, affiliate and vendor management aspects of the Website ("Software").

37. Walker wrote the Software based upon the specifications, concepts and ideas provided by Tattoo Johnny.

38. After Walker's initial work on the Software, many modifications and improvements have been made – many of which were necessitated due to bugs and errors in the version written by Walker.

39. Walker embedded and integrated the code of the Software into the existing code for the Website. All changes, modifications, and improvements were subsequently integrated into this code.

40. The initial Software and all subsequent modifications were based upon the concepts, ideas, business model and designs of Tattoo Johnny, and the final product and any modifications thereto was subject to the approval of either Mark or David.

41. All right, title and interest to and in the Software and the Website remained with Tattoo Johnny at all times, and neither MRI nor Walker, nor any other third party, asserted any interest in the Software or Website except for the false claims set forth below.

42. Walker presumably admitted and acknowledged that all rights, title and interest to the Website and its contents vested in Tattoo Johnny. Specifically, Walker included a copyright notice on every of the Website that states, "This site and its contents are the sole property of Tattoo Johnny and its associated artists where noted. All rights reserved."

### Claiming Copyright of the Software

43. Upon the termination of his services by Tattoo Johnny, Walker demanded that he be paid $100,000 as a lump-sum payment or severance. Tattoo Johnny rejected Walker's demand due to the damage Walker had already caused the business, and because Walker was not entitled to any additional payment upon the termination of his services.

44. Upon information and belief, on or about December 19, 2007, Walker filed for copyright registration of the Software which Walker subsequently labeled "AspeCom".

45. Upon information and belief, Walker filed for copyright registration of the Software in an effort to extort additional payments from Tattoo Johnny, and in an effort to damage Tattoo Johnny's business.

46. On or about December 20, 2007, William Denny, Esq., counsel for Walker, sent a letter to Tattoo Johnny and ThePlanet.com, Inc. ("ThePlanet"), Tattoo Johnny's Internet Service Provider ("ISP"), claiming that Tattoo Johnny's continued use of the Software infringed upon Walker's asserted copyright. Mr. Denny demanded: (a) that Tattoo Johnny and ThePlanet cease and desist from using, reproducing, performing or displaying the Software or any similar product; (b) that the Software be destroyed immediately; (c) an accounting of revenues derived from use of the Website and ThePlanet's hosting of the Website; and (d) that profits from Tattoo Johnny's business be paid Walker.

47. Upon information and belief, on or about December 20, 2007, Mr. Denny sent another letter to ThePlanet. This second letter represented an effort by Walker to harm Tattoo Johnny and its reputation by disrupting its business. Specifically, this letter served as a complaint under the notification requirements of the Digital Millennium Copyright Act of 1998 ("DMCA Complaint"). Pursuant to the DMCA, to avoid potential liability, an ISP is required to disable or remove the alleged infringing content from its server until the infringement claim is resolved.

48. Upon information and belief, Walker submitted his DMCA Complaint in an attempt to extort money from Tattoo Johnny as Walker was aware of the DMCA procedures and the damage to Tattoo Johnny if its Website was shut down.

49. Upon information and belief, Walker's attempted copyright registration of Tattoo Johnny's Software also knowingly and intentionally infringed upon several of Tattoo Johnny's intellectual property rights including registered trademarks, common law trademarks, copyrights, and other intellectual property unequivocally owned by Tattoo Johnny.

## FIRST COUNT

### Cancellation of Registration of Copyright

50. Tattoo Johnny repeats and realleges each and every allegation contained in Paragraphs 1 through 49 of this Complaint as if fully set forth at length herein.

51. Walker's filing for the copyright registration of the Software was fraudulent in that the copyright in the Software is owned by Tattoo Johnny or a third party.

52. Walker's copyright registration of the Software was filed in bad faith and in violation of the 1976 Copyright Act.

53. Walker's use and copyright registration of the Software will result in an infringement of Tattoo Johnny's unregistered copyright in the Software.

54. As a direct and proximate result of Walker's attempted copyright registration of the Software, Tattoo Johnny has been and continues to be damaged by, *inter alia*, being prevented from registering the Software with the United States Copyright Office despite being the rightful owner of the Software.

55. As a direct and proximate result of Walker's attempted copyright registration of the Software, Tattoo Johnny has been and continues to be damaged.

56. Based upon the foregoing, Walker's attempted copyright registration of the Software must be cancelled.

## SECOND COUNT

### Misrepresentation under the DMCA

57. Tattoo Johnny repeats and realleges each and every allegation contained in Paragraphs 1 through 56 of this Complaint as if fully set forth at length herein.

58. Walker's actions as set forth herein represents a knowing and intentional violation of Tattoo Johnny's rights under 17 U.S.C. § 512(f). Specifically, Walker has materially misrepresented that an infringement of his purported copyright has occurred.

59. By reason of the foregoing acts of Walker and his attorney, Walker has knowingly materially misrepresented that Tattoo Johnny's continued use of the Software infringes upon any of Walker's claimed copyrights.

60. Pursuant to 17 U.S.C. §512(f), for knowingly misrepresenting that an infringement has occurred under the DMCA, Walker is liable for all damages, including attorney's fees and costs incurred by Tattoo Johnny.

61. Based upon the foregoing, Tattoo Johnny has been and continues to be damaged.

### THIRD COUNT

**Declaratory Judgment - Implicit License to Use Software**

62. Tattoo Johnny repeats and realleges each and every allegation contained in Paragraphs 1 through 61 of this Complaint as if fully set forth at length herein.

63. In the alternative, even if Tattoo Johnny is not the exclusive owner of the copyright in the Software, Tattoo Johnny has an implicit license to use the Software.

64. The Software was created at Tattoo Johnny's request to the exact specifications and aesthetics as directed by Tattoo Johnny.

65. Walker delivered the Software to Tattoo Johnny.

66. Walker intended that Tattoo Johnny reproduce and distribute the Software, and he was paid accordingly.

67. Even if Walker owned a copyright in the Software – which he does not – Tattoo Johnny's use and continued use of the Software is non-infringing because such use is authorized by a non-exclusive implicit license to use the Software.

68. Based upon the foregoing, Tattoo Johnny's continuing use of the Software is permissible under the 1976 Copyright Act and all of Walker's actions to prevent such use are malicious and impermissible.

69. Based upon the foregoing, Tattoo Johnny has been and continues to be damaged.

## FOURTH COUNT

### Tortious Interference with Contract

70. Tattoo Johnny repeats and realleges each and every allegation contained in Paragraphs 1 through 69 of this Complaint as if fully set forth at length herein.

71. Tattoo Johnny and ThePlanet are parties to a contract in which ThePlanet acts as Tattoo Johnny's ISP for the Website.

72. Walker intentionally and maliciously used his frivolous DMCA Complaint to interfere with the contract between Tattoo Johnny and ThePlanet as an ISP is required take certain steps to avoid liability under the DMCA, which include issuing proper notice to the alleged infringing party requiring that party to assume costs to respond to such notice, and disabling or removing the website from its server.

73. Walker's intentional and malicious use of the DMCA to interfere with the contract between Tattoo Johnny and ThePlanet proximately caused a loss to Tattoo Johnny's prospective gain and caused other damages.

74. Based upon the foregoing, Tattoo Johnny has been and continues to be damaged.

## FIFTH COUNT

### Tortious Interference with Economic Advantage

75. Tattoo Johnny repeats and realleges each and every allegation contained in Paragraphs 1 through 74 of this Complaint as if fully set forth at length herein.

76. Tattoo Johnny's operates the Website in pursuit of business and profit.

77. After Walker's employment with Tattoo Johnny was lawfully terminated, Walker maliciously refused to handover certain passwords, account information, and outstanding projects belonging to Tattoo Johnny, costing Tattoo Johnny significant fees in consulting and expert services.

78. Walker maliciously threatened to destroy Tattoo Johnny's business.

79. Walker's intimate working knowledge of the Website and all of the security provisions combined with Walker's subsequent threats, compelled Tattoo Johnny to retain outside consulting and expert services for the Website to prevent Walker from carrying out his threats and to protect the legitimate business interests of Tattoo Johnny.

80. Tattoo Johnny was forced to spend a significant amount of money to take prophylactic measures as a direct and proximate result of Walker's conduct and threats.

81. Based upon the foregoing, Tattoo Johnny has been and continues to be damaged.

**WHEREFORE**, Tattoo Johnny, demands judgment against Walker, as follows:

A. Ordering the United States Copyright Office to cancel Walker's application for the copyright registration in the Software and, to the extent already issued, revoke and cancel Walker's copyright registration in the Software;

B. Declaring that Tattoo Johnny is the rightful copyright holder in the Software;

C. Declaring that Walker is not entitled to protection of the Software under the 1976 Copyright Act or common law copyright or intellectual property laws;

D. Declaring that Tattoo Johnny's use and continued use of the Software is permissible under the 1976 Copyright Act;

E. Issuance of a permanent injunction restraining Walker and his agents, servants, employees, and those persons acting in active concert or participation with him from:

    1. Infringing Tattoo Johnny's copyright in the Software;

    2. Filing any further DMCA complaints against Tattoo Johnny alleging any copyright infringement in connection with the Software or the Website;

    3. Inducing, encouraging, aiding, abetting, or contributing to any of the aforesaid acts;

F. Ordering that Walker immediately withdraw any and all DMCA Complaints against Tattoo Johnny;

G. Ordering that Walker immediately return all originals and copies of Tattoo Johnny owned material, including but not limited to, company passwords, account information, and outstanding projects Walker worked on while employed by Tattoo Johnny;

H. Direct, consequential and punitive damages;

I. Statutory damages;

J. Attorneys' fees and cost;

K. For such other further relief as this Court may deem equitable and proper.

## JURY DEMAND

Tattoo Johnny hereby demands a trial by jury on all issues.

By: /s/ *Katharine V. Jackson*
David E. Wilks (Del. Bar. No. 2793)
Katharine V. Jackson (Del. Bar. No. 4800)
**Reed Smith LLP**
1201 Market Street
Suite 1500
Wilmington, DE 19801
kjackson@reedsmith.com
(302) 778-7510

OF COUNSEL:
Michael J. Feldman (MF 7889)
**OLENDERFELDMAN LLP**
2840 Morris Avenue
Union, New Jersey 07083

Attorneys for Plaintiff
Tattoo Johnny, Inc.

Dated: January 16, 2008

08-035

# COVER SHEET

The US civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of the Court for purposes of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFF: Tattoo Johnny, Inc.<br>(b) County of Residence of Plaintiff<br><br>Fayette County, Georgia | DEFENDANTS: Matthew Walker<br>County of Residence of First Listed Defendant<br>New Castle County, Delaware<br>Note: In land condemnation cases, use the location of the tract of land involved. |
|---|---|
| (c) Attorneys (Firm Name, Address, and Telephone Number)<br><br>Reed Smith LLP<br>1201 Market Street, Suite 1500<br>Wilmington, Delaware 19801<br>302.778.7560<br><br>OlenderFeldman LLP<br>2840 Morris Avenue<br>Union, NJ 07083<br>908-964-2424 | Attorneys (If Known)<br><br>Potter Anderson & Corroon, LLP<br>1313 North Market Street, P.O. Box 951<br>Wilmington, DE 19899-0951<br>302.984.6000 |

FILED 2008 JAN 16 PM 4:05 CLERK U.S. DISTRICT COURT DISTRICT OF DELAWARE

## II. BASIS OF JURISDICTION (Place an x in one box only)

- ☐ 1. US Government Plaintiff
- ☒ 3. Federal Question US Government Not Party
- ☐ 2. US Government Plaintiff
- ☐ 4. Diversity (Indicate Citizenship of Parties in Item (III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an x in one box for Plaintiff and one box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ | ☒ | Incorporated or Principal Place of Business in This State | ☐ | ☐ |
| Citizen of Another State | ☐ | ☐ | Incorporated and Principal Place of Business in Another State | ☒ | ☐ |
| Citizen or Subject of a Foreign Country | ☐ | ☐ | Foreign Nation | ☐ | ☐ |

## IV. NATURE OF SUIT (PLACE AN x IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liablity<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | ☐ 362 Personal Injury - Med Malpractice<br>☐ 365 Personal Injury - Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br>**LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☒ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395f)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (US plaintiff or Defendant)<br>☐ 871 IRS - Third Party 28 USC 7609 | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 891 Agriculture Acts<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ Other Statutory Actions |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Tort Product Liability<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights | **PRISONER PETITIONS**<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ Other | | | |

## V. ORIGIN (PLACE AN x IN ONE BOX ONLY)

☒ 1 Original Processing   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.) 17 U.S.C. §101, et al., Plaintiff is seeking a declaratory judgment for copyright ownership of certain software.

WILLIB-49870.1-DEWILKS 1/16/08 11:22 AM

| VII. REQUESTED IN COMPLAINT: Check if this is a CLASS ACTION | DEMAND $ | Check YES only if demanded in complaint: JURY DEMAND: ☒ Yes  ☐ No |
|---|---|---|

VIII. RELATED CASE(S) IF ANY  (See instructions):   Judge_____   Docket Number_____

Date: 1/14/08

Signature of Attorney of Record: [signature]

United States District Court

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. __08-035__

# ACKNOWLEDGMENT
# OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF __2__ COPIES OF AO FORM 85.

__1-16-08__
(Date forms issued)

__Mike Bobish__
(Signature of Party or their Representative)

__Mike Bobish__
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action